```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

ANTHONY LUCAS                                CIVIL ACTION

VERSUS                                       NUMBER: 11-2752

SHERIFF ROBERT J. CROWE,                     SECTION: "B"(5)
et al.

## REPORT AND RECOMMENDATION

Presently before the Court is the Rule 56(c) motion for summary judgment of defendants, Sheriff Robert J. Crowe, Warden Demille Topps, and Deputy Sheriff Kim Brumfield of the Washington Parish Jail ("WPJ"). (Rec. doc. 26). Plaintiff has filed no memorandum in opposition to the defendants' motion. [1] For the reasons that follow, it is recommended that the defendants' motion be granted.

This 42 U.S.C. §1983 proceeding was filed in forma pauperis ("IFP") by pro se plaintiff, Anthony Lucas, against defendants, Sheriff Robert J. Crowe, Warden Demille Toups, Deputy Sheriff Kim Brumfield, and Doctor Jerry Thomas. [2] At the time that he authored

---

[1] As plaintiff has filed no opposition to defendants' motion, timely or otherwise, the Court may properly assume that he has no opposition to it. See Local Rule 7.5; Bean v. Barnhart, 473 F. Supp.2d 739, 741 (E.D. Tex. 2007).

[2] Service as to Doctor Thomas was accepted by the Deputy Warden of WPJ, (rec. doc. 8), but the doctor has never made an appearance herein and plaintiff has not moved for a default against him. Nevertheless, it will be recommended that plaintiff's claim against the doctor be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

his original complaint, plaintiff was an inmate of WPJ. [3]/ In that complaint, plaintiff stated that he had attended "sick call" on July 15, 2011 for stomach problems which he suspected may be a bleeding ulcer after experiencing bloody stools. At that time, the doctor prescribed him heartburn medication despite the fact that he did not suffer from heartburn. For this ineffectual treatment, plaintiff requested $50,000 in monetary damages.

Plaintiff attached to his complaint an undated letter he had written to Deputy Brumfield in which he questioned the effectiveness of the medication he had been prescribed and requested to be taken to a hospital to be examined by someone other than Dr. Thomas. Brumfield responded to plaintiff's letter on August 4, 2011, explaining that jail protocol provided that only Dr. Thomas could order a referral to another physician which then had to be approved by the Offender Review Board, procedures that may take a day or two to be accomplished. Also attached to plaintiff's complaint was a "Statement of Claim" in which he alleged that he had submitted grievances to the Warden and Sheriff about the problem, all to no avail, and that his condition persisted despite the response he had received from Brumfield. He also complained of the adequacy of the law library at WPJ as well

---

[3]/ Plaintiff was transferred from WPJ to the River Correctional Center ("RCC") in Ferriday, Louisiana, on February 14, 2012. (Rec. doc. 13, p. 3).

as the fact that indigent inmates were not provided with basic hygiene items like soap, toothpaste, toothbrush, etc. (Rec. doc. 1).

On November 23, 2011, correspondence was received from plaintiff which was filed and docketed as an amended complaint. (Rec. doc. 9). In that missive, plaintiff stated that he still had not been seen by a doctor outside of WPJ. He also complained of a lack of tissue paper from November 6th to the 17th, inadequacies in the jail's security system, ARP, and booking procedures, and a substandard mattress. (Id.). In his subsequent response to the Court's Briefing Order, plaintiff advised that he had been transported to the LSU Medical Center in Bogalusa on January 6, 2012 where blood work was done and x-rays were taken. (Rec. doc. 15). One week later, plaintiff was inadvertently provided with a letter that indicated that an appointment had been scheduled for him at the LSU G.I. Clinic in New Orleans for January 27, 2012. For whatever reason, plaintiff was not taken to that appointment. By the time that he prepared his response to the Briefing Order, plaintiff had been transferred to the River Correctional Center ("RCC") and the nurse there told him that there was nothing that she could do about the situation until she spoke with Deputy Brumfield. (Id.)

On April 30, 2012, a preliminary conference was held in this matter with plaintiff and defense counsel participating by

telephone. (Rec. doc. 18). [4]/ During the course of the conference, plaintiff focused exclusively on his claim regarding the adequacy of the medical care he had received for his stomach problems, reiterating that the medication he had been prescribed was ineffective and that he had undergone some tests but not others. When queried as to why he had sued the individuals named as defendants herein, plaintiff stated that he had sent grievances to all four of the named defendants and that they had failed to take appropriate action to deal with his medical issues. (Id.). Plaintiff's medical records as well as the grievances that he initiated while he was housed at WPJ were subpoenaed and have been received by the Court.

By way of their present motion, the moving defendants now seek summary judgment in their favor pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Under Rule 56(c), summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. V. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, he may not rest on the mere allegations or denials in his pleadings. Spellman v. Shalala, 1 F.

---

[4]/ Although scheduled as a preliminary conference, the conference was actually more akin to a Spears hearing which is in the nature of an amended complaint or a more definite statement. See Jackson v. Vannoy, 49 F.3d 175, 176-77 n. 4 (5th Cir.), cert. denied, 516 U.S. 851, 116 S. Ct. 148 (1995).

3d 357, 360 (5th Cir. 1993). Once a properly supported motion for summary judgment is made, the burden shifts to the non-movant who bears the burden of proof at trial to show with "'significant probative' evidence" that there exists a triable factual issue. <u>Kansa Reinsurance v. Cong. Mortgage Corp. of Texas</u>, 20 F.3d 1362, 1371 (5th Cir. 1994)(quoting <u>In re: Municipal Bond Reporting Antitrust Litig.</u>, 672 F.2d 436, 440 (5th Cir. 1982)). That burden is not satisfied by "... 'some metaphysical doubt as to the material facts,'... by 'conclusory allegations,' .... by 'unsubstantiated assertions,' ... or by only a 'scintilla' of evidence." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (citations omitted). Rather, the non-movant "... must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case; naked assertions of an actual dispute will not suffice." <u>Matter of Lewisville Properties, Inc.</u>, 849 F.2d 946, 950 (5th Cir. 1998). The insufficiency of the proof must be such that it would prevent a rational finder of fact from finding for the non-moving party. <u>Phillips Oil Co. v. OKC Corp.</u>, 812 F.2d 265, 272-73 (5th Cir.), <u>cert. denied</u>, 484 U.S. 851, 108 S.Ct. 152 (1987).

The medical records that have been provided to the Court contain a "Booking Medical Sheet" from WPJ dated April 18, 2011. The information on that form indicates that plaintiff believed that he may have stomach ulcers but that he had not suffered from such

5

a condition in the past. An additional "Booking Sheet" reflects that plaintiff was issued an "admission kit", a mattress, a blanket, a sheet, a jumpsuit, an ID wristband, a cup, and a laundry sack for his personal use.

On April 19, 2011, plaintiff completed a "Request Form" asking that he be examined by the Medical Department for pain to his stomach and for the presence of blood when toileting. Two days later, plaintiff was seen by Dr. Thomas who noted no hemorrhoids or blood present. The impression was hematochezia by report and plaintiff was instructed to bring any additional instances of blood in his stool to the attention of the deputy on his tier for verification.

The next mention made of any medical problems was on July 10, 2011 when plaintiff completed another "Request for Medical Treatment" form complaining of pain and a need for treatment for a possible ulcer or kidney issues. On that same day, plaintiff completed an ARP form in which he questioned Dr. Thomas' earlier diagnosis and threatened to file a lawsuit. Plaintiff was put on the list to be seen by Dr. Thomas who re-evaluated him on July 14, 2011 for complaints of epigastric pain. Mild tenderness to the epigastric area was noted on physical examination as well as tinea to the feet. Plaintiff was prescribed Prilosec to be taken on a daily basis and a seven-to-ten day course of Lotrisone for his feet. Some time thereafter, plaintiff wrote to Deputy Brumfield

and questioned the appropriateness of the medication he had been prescribed. (Rec. doc. 1, p. 9). He also expressed his reluctance to being seen again by Dr. Thomas and requested that he be taken to a hospital to be examined by another physician. (Id.). Deputy Brumfield responded to plaintiff's letter on August 4, 2011, explaining that she had discussed the matter with the Warden and that there was certain protocol to be followed. (Id. at p. 7) Although plaintiff did not want to see Dr. Thomas again, only he could refer plaintiff to another physician which referral then had to be approved by the Offender Review Board. Plaintiff was asked to be patient with this process until it could be completed. (Id.).

On August 16, 2011, plaintiff completed a second ARP form in which he complained of being treated for heartburn rather than for the stomach problem that he believed he had. Plaintiff completed yet another ARP form on December 13, 2011 that was specifically directed to Deputy Brumfield. In that form, plaintiff complained that previous ARP's to the Sheriff and the Warden had gone unanswered and he threatened to contact local television stations to publicize his plight. Brumfield received and responded to plaintiff's ARP on December 15, 2011, stating the she had put plaintiff's name on the sick call list and instructing him to seek a referred to a specialist from Dr. Thomas as she had previously directed him on August 4, 2011. That same day, plaintiff was re-

evaluated by Dr. Thomas who noted his continued complaints of pain without heartburn and the ineffectiveness of Prilosec. Upon physical examination, plaintiff had general discomfort around the area of the naval. Dr. Thomas ordered a CT scan of the abdomen, with and without contrast, and referred plaintiff to Dr. Hussain, a GI specialist. Dr. Thomas' orders and his treatment note were faxed by Deputy Brumfield to the appropriate medical personnel as "URGENT" with a request to be notified of the scheduled appointment dates.

After apparently not receiving the requested appointment dates, on December 19, 2011 Deputy Brumfield sent a second fax requesting appointment dates which was again marked as "URGENT". Following up on those facsimile transmissions, on December 22, 2011, Brumfield spoke with one Julie Gibbs and was advised that plaintiff had an appointment at the Radiology Clinic on January 6, 2012 and an appointment with Dr. Hussain on January 18, 2012. Brumfield informed plaintiff of the upcoming appointments the same day without mentioning the specific dates of same for obvious security reasons. On January 5, 2012, the Bogalusa Medical Center ("BMC") faxed Brumfield confirmation of plaintiff's appointment with Dr. Hussain. Plaintiff was seen at BMC on January 6, 2012 where blood work was performed and he underwent a CT scan of the abdomen with and without contrast. The latter testing revealed no evidence of an acute abnormality but did demonstrate mild

8

prominence of the colonic stool which was possibly related to constipation.  If plaintiff's symptoms persisted, further CT evaluation of the pelvis might prove to be useful.

On January 9, 2012, plaintiff completed yet another ARP form which he directed to Deputy Brumfield.  He was still experiencing pain and inquired why he had not been seen by Dr. Hussain. Brumfield responded to plaintiff the following day, explaining that the diagnostic testing had to go forward first so that Dr. Hussain would have the results in hand when he conducted his evaluation. Based upon the records that follow, it appears that plaintiff was not taken to be seen by Dr. Hussain on January 18, 2012 as the needed correctional officers were in court that day and there was no transport available.  In the meantime, however, another appointment had been scheduled for January 27, 2012 at the LSU GI Clinic in New Orleans.  For her part, Deputy Brumfield left two voicemail messages in an attempt to reschedule plaintiff's appointment with Dr. Hussain and ultimately secured a new date of March 2, 2012.  What became of plaintiff's January 27, 2012 appointment is unclear but he was subsequently transferred from WPJ to RCC on February 14, 2012.  On that same date, Brumfield faxed plaintiff's medical chart to the jail officials at RCC which she followed up with additional documentation on March 2 and May 22, 2012.

Among the various jail-generated paperwork that is before the

9

Court are screening documents that were prepared upon plaintiff's arrival at RCC. Medical screening documents indicate that plaintiff denied any serious illnesses or GI problems but did complain of abdominal pain. Present medical problems were again denied on February 27, 2012.

Although plaintiff provides no clear indication of the capacities in which the named defendants were sued he does complain of matters that were performed in the course and scope of their duties as duly-elected or appointed correctional officials. Because a suit against a governmental officer in his official capacity is the same as a suit against the governmental entity that the officer represents, §1983 liability requires proof of: 1) a policymaker, 2) an official policy or custom, and 3) a violation of constitutional rights whose "moving force" is the policy or custom. Quatroy v. Jefferson Parish Sheriff's Office, No. 04-CV-0451, 2009 WL 1380196 at *3-4 (E.D.La. May 14, 2009). On that point, the Court is directed to no policy that is unconstitutional on its face or to a facially innocuous policy that was promulgated with deliberate indifference to the known or obvious consequences that a constitutional violation would occur. Id. at *6.

In their individual capacities, the defendants are entitled to qualified immunity if their actions were not objectively violative of a clearly established constitutional right which in this case is the Eighth Amendment's prohibition against exhibiting deliberate

indifference to a prisoner's serious medical needs. See, e.g., Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006). In order to prevail on such a claim, a prisoner must demonstrate that prison officials were deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet. Gobert, 463 F.3d at 346 (internal quotation omitted). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). Such a showing requires the inmate to allege that prison "officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino v. Tex. Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)(quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent

exceptional circumstances." Gobert, 463 F.3d at 346 (footnote omitted).  The decision of whether to provide additional treatment to an inmate is a classic example of a matter of medical judgment. Domino, 239 F.3d at 756.  And where a §1983 claim is premised on a delay in the provision of medical care, a prisoner must also allege that he suffered substantial harm as a result of the delay. Richard v. Martin, 390 Fed.Appx. 323, 325 (5th Cir. 2010)(citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)); Taylor v. Bexar County, No. 10-CA-045, 2011 WL 759549 at *4 (W.D. Tex. Feb. 23, 2011).

Measured against the foregoing standards, plaintiff has failed to establish the requisite level of subjective and objective deliberate indifference on the part of the named defendants to prevail on an Eighth Amendment claim.  On the contrary, the medical and prison records upon which the Court may properly rely, Gobert, 463 F.3d at 346 n.24, refute such a conclusion.  Two days after plaintiff submitted a sick call request form he was seen by Dr. Thomas who examined him, rendered a diagnosis, and gave him instructions geared to validating his complaints.  In July of 2011, plaintiff submitted another request for medical care and he was re-evaluated by Dr. Thomas several days later who prescribed certain medications.  Plaintiff questioned the effectiveness of that medication and requested that he be taken to the hospital and examined by someone else.  Rather than submitting another sick call

request form plaintiff initiated an ARP grievance in which he questioned the doctor's diagnosis and treatment plan. After initiating a second grievance that was specifically directed to Brumfield, plaintiff was promptly seen again by Dr. Thomas who ordered additional testing and a referral to a specialist. Inherent in that process were the typical administrative and scheduling delays that are occasionally experienced by anyone who is in need of medical care. Certain testing that was done on January 6, 2012 was suggestive of only constipation and the additional consultation and testing that was scheduled appears not to have gone forward based on events beyond the medical staff's control such as a lack of transportation or, at best, simple neglect.

The urgency with which Brumfield handled the scheduling of plaintiff's medical treatment belies any claim of deliberate indifference. Plaintiff's disagreement regarding the delay or the type of treatment he was provided is insufficient to prevail on a §1983 claim. Taylor, 2011 WL 759549 at *4. "Experiencing 'occasional delays in obtaining' medical treatment is insufficient to prove a refusal of providing medical care when the inmate's ... medical records demonstrate that he received treatment." Id. (quoting Gobert, 463 F.3d at 346); see also Richard, 390 Fed.Appx. at 324-25. The medical records from RCC further demonstrate that plaintiff suffered no substantial harm as a result of any treatment

13

delays he may have experienced while he was housed at WPJ. Mendoza, 989 F.2d at 195. As respects the Sheriff and the Warden, plaintiff made clear during the course of the preliminary conference that they were named as defendants herein because they had failed to properly respond to grievances he had submitted regarding the quality of his medical care. (Rec. doc. 18, p. 2). Such unresponsiveness is not actionable under §1983 as inmates have no constitutional right to an adequate, effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Propes v. Mays, 169 Fed.Appx. 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Tyson v. Tanner, No. 08-CV-4599, 2009 WL 2883056 at *5 (E.D.La. Aug. 25, 2009).

Also raised in plaintiff's original complaint was a generalized claim regarding the adequacy of the law library at WPJ. To the extent that such a claim was not abandoned by plaintiff through his subsequent filings $^{5}$/ and his failure to articulate it during the preliminary conference, nowhere does he set forth a relevant, actual injury stemming from the inadequacy of which he complains. Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (citing Lewis v Casey, 518 U.S. 343, 351-54, 116 S. Ct. 2174, 2180-81 (1996)). With respect to plaintiff's complaint that indigent

---

$^{5}$/ Supplemental and amended pleadings typically supersede a plaintiff's original complaint. Rossignal v. Tillman, No. 10-CV-3044, 2011 WL 1193017 at *2 (E.D. La. March 25, 2011).

inmates were not provided with basic hygiene items, he lacks standing to bring claims on behalf of other inmates and the records that have been provided to the Court indicate that he himself was provided with an admission kit, clothing, bedding, and other items for his personal use upon his arrival at WPJ.  In any event, the Constitution does not require that free hygiene supplies be provided to non-indigent inmates.  Cummings v. Gusman, No. 09-CV-0144, 2009 WL 1649737 at *3 n.11 (E.D.La. June 9, 2009).

By way of correspondence which was filed and docketed as an amended complaint, plaintiff additionally complained of a lack of tissue paper for a short period of time.  Absent some suggestion that plaintiff was otherwise unable to attend to his hygienic needs or that he suffered medical problems as a result of the brief lack of tissue paper that lapse fails to rise to the level of a constitutional violation.  See, e.g., Gates v. Cook, 376 F.3d 323, 328 (5th Cir. 2004); Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998). Plaintiff also complains of various alleged inadequacies in the jail's security system including the lack of a manned guard in the control booth, the lack of an intercom system, and insufficient monitoring of surveillance cameras such that fights have broken out with little response from prison guards.  Such allegations are properly construed as constituting a "failure-to-protect" claim. In order to prevail on such a claim a prisoner must show that he was incarcerated under conditions posing a substantial risk of

serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). To act with deliberate indifference, the prison official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and the official must also draw the inference. Id. (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). As plaintiff makes no allegation that the allegedly inadequate security ever placed him in harm's way, that he personally was particularly susceptible to being attacked, or that prison officials had been made aware of the substantial risk of harm and were deliberately indifferent to his need for protection summary judgment on this claim is appropriate as well. Rue v. Gusman, No. 09-CV-6480, 2010 WL 1930936 at *6 (E.D.La. May 11, 2010).

Finally, plaintiff complained of alleged inadequate booking procedures in that individuals being admitted to WPJ are not routinely de-loused. Such screening, however, is not constitutionally mandated. Rue, 2010 WL 1930936 at *9. Plaintiff also complained that the mattress he was provided was broken up into segments rather than being made up of one continuous piece, thus making it uncomfortably soft. This allegation similarly fails to rise to the level of a constitutional violation. Conlin v. Thaler, 347 Fed.Appx. 983 (5th Cir. 2009).

On a final note, common to all of the claims raised in

16

plaintiff's complaint other than his medical care claim and his claim regarding alleged inadequacies in WPJ's administrative remedy procedure is the lack of personal involvement on the part of the Sheriff or the Warden.  Such is an essential element of a civil rights cause of action.  <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983).  And as plaintiff has not alleged that he suffered physical injury as a result of the conditions of which he complains his request for compensatory damages is not tenable here.  <u>Rue</u>, 2010 WL 1930936 at *2 (citing 42 U.S.C. §1997e(e)).

### Recommendation

For the foregoing reasons, it is recommended that defendants' motion for summary judgment be granted and that plaintiff's claim against Dr. Thomas be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this  14th  day of      February     ,
2013.

                                      ALMA L. CHASEZ
                        UNITED STATES MAGISTRATE JUDGE